

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

DOROTHY SARA LONG,

      Plaintiff,

v.                              Civil Action No. 4:11cv47

CHEVRON CORPORATION, and

TEXACO, INC.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on separate motions to dismiss Dorothy Sara Long's ("Plaintiff") Amended Complaint filed by Chevron Corporation ("Chevron") and Texaco, Inc. ("Texaco"). Both motions have been filed pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and they both contend that this Court has no personal jurisdiction over Defendants, and that even if jurisdiction did exist, Plaintiff's Amended Complaint has failed to state a claim upon which relief can be granted. After considering the motions, associated briefs, the Amended Complaint, and the points made at oral argument, for the reasons set forth below, Defendants' motions to dismiss are **GRANTED**.

## I. Facts

Like many lawsuits, this suit involves allegations of misappropriation of money. Plaintiff brings this suit as the sole heir and beneficiary of Augustus C. Long ("Mr. Long"), seeking money allegedly owed to him by Defendants, Chevron and Texaco. According to Plaintiff's Amended Complaint, her father, Mr. Long, now deceased, was at various times the Chairman, President, Chief Executive Officer, and a Director, of Texaco. Am. Compl. ¶ 9. Plaintiff also alleges that, commencing in the 1960's, Mr. Long "arranged for and regularly received numerous post-retirement payments, director's fees, consulting fees, office and travel expenses, residential properties, pension payments and health care, legal, accounting and tax benefits, among other post-retirement benefits and assistance." Id. These benefits are referred to in the Amended Complaint, and will be referred to in this Opinion and Order, as the "Long Post-Retirement Benefits." These Long Post-Retirement Benefits were allegedly established by executives at Texaco and administered by Texaco, which, according to the Amended Complaint, is now a wholly owned and controlled subsidiary of Chevron. Am. Compl. ¶ 10.

Although the Amended Complaint does not identify with any more specificity the benefits that Mr. Long received, the Amended Complaint does attempt to provide circumstantial

2

evidence of the types of benefits to which Mr. Long may have been entitled. For example, the Amended Complaint has attached to it a filing that Chevron allegedly made to the Securities and Exchange Commission which shows that Chevron has contributed money to "Employee Benefit Plans." Am. Compl. ¶ 11 & Ex. 6. However, this filing makes no mention of any specific benefits given to Mr. Long. See Am. Compl. Ex. 6. The Amended Complaint also includes a list purportedly created by a one-time secretary of Mr. Long, which, according to the Amended Complaint, "indicates a variety of income and continuing and regular post-retirement benefits" that Mr. Long was receiving. Am. Compl. ¶ 11 & Ex. 7.

With these Long Post-Retirement Benefits in mind, the Amended Complaint alleges that it was Chevron and Texaco's "routine practice" to "make significant lump sum payments in exchange for the termination of post-retirement benefits to former executives, and such a payment was contemplated for Mr. Long." Am. Compl. ¶ 12. In other words, the Amended Complaint asserts that companies such as Chevron and Texaco often attempt to convert long-term retirement benefits into a one-time lump sum payment to retirees. According to the Amended Complaint, that is precisely what happened for Mr. Long. The Amended Complaint states that "[i]n connection with the merger discussions between Chevron and Texaco which commenced in 1999

3

and resulted in Chevron's acquisition of Texaco as a wholly owned and controlled subsidiary, Chevron and Texaco directly, or by the agents of one or both, in actions taken on behalf of the combining companies, terminated the Long Post-Retirement Benefits and created the Long Buyout Fund."[1]  Am. Compl. ¶ 19.

However, Plaintiff alleges that this buyout fund was not enjoyed by Mr. Long.  The Amended Complaint alleges that "Chevron and Texaco, directly or by the agents of one or both, misappropriated the Long Buyout Fund" and "have refused to deliver the Long Buyout Fund to its rightful owner, Plaintiff, the sole heir and beneficiary of Mr. Long."  Am. Compl. ¶¶ 20, 21.  Further, the Amended Complaint contends that in 2002, both Chevron and Texaco falsely represented to Plaintiff that they had actually complied with all of their financial obligations to Mr. Long.  Am. Compl. ¶ 22.

Plaintiff further alleges that she relied on this misrepresentation to her detriment by paying numerous bills formerly covered by the Long Post-Retirement Benefits and embarking on a "wild goose chase" to obtain the return of the

---

[1] As further evidence of the existence of this fund, the Amended Complaint attaches an exhibit that indicates that Chevron paid $790,000,000 in Employee Termination Benefits between 2000 and 2002, among other payments to retirees.  Since Mr. Long had attained such a high position at Texaco, and continued his involvement with Texaco upon separation from the corporation, the Amended Complaint infers that he must have been one of the employees that received a lump sum payment.  See Am. Compl. ¶¶ 19-20.

funds from Mr. Long's former attorneys.   Am. Compl. ¶ 23. Moreover, the Amended Complaint contends that in 2011, Chevron repeated the false representation that it had complied with all of its financial obligations to Mr. Long.   Am. Compl. ¶ 24. Plaintiff notes that she has made repeated attempts to locate the Long Buyout Fund, such as suing Mr. Long's former lawyers and having numerous conversations with current and former Chevron executives, but all these attempts have been for naught. Am. Compl. ¶¶ 26, 27.

## II. Procedural History

Based on the foregoing factual allegations, Plaintiff filed a complaint in the Circuit Court for Mathews County, Virginia, on February 15, 2011.   This complaint only alleged wrongdoing on the part of Chevron, and thus Texaco was not a named party.   The complaint was subsequently removed to this Court by Chevron on March 14, 2011.   Thereafter, Chevron filed a motion to dismiss, asserting that Plaintiff has failed to state a claim upon which relief can be granted and asserting that this Court has no personal jurisdiction over Chevron.   Docket No. 4.   After the parties fully briefed the motion, Plaintiff filed an Amended Complaint in this Court.[2]   Docket No. 9.   The Amended Complaint, unlike the original complaint, named both Chevron and Texaco as

---

[2] Since Plaintiff's Amended Complaint supersedes her previous Complaint, the Court deems Chevron's previous motion to dismiss MOOT.

Defendants. Chevron filed a motion to dismiss on April 29, 2011. Docket No. 11. However, Texaco was not served with process until June 14, 2011. Docket No. 22. As a result, Texaco did not file its motion to dismiss until July 1, 2011. Docket No. 23. On August 9, 2011, the Court heard oral argument on both Chevron and Texaco's motions to dismiss.

Both Defendants raise substantially similar arguments in their motions, seeking dismissal of all five counts alleged in the Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. As to the specifics of the Amended Complaint, Count I is titled "Equitable Action for an Injunction," and it seeks to have the Court order Chevron to disclose the amount, location, recipients and responsible parties associated with the termination of the Long Post-Retirement Benefits and the misappropriation of the Long Buyout Fund. Am. Compl. ¶ 34. In Count II, Plaintiff asserts an "Equitable Action for a Constructive Trust," wherein Plaintiff seeks to have the Court impose a "common law constructive trust" on the assets of Chevron and Texaco in an amount equal to the amount of the Long Buyout Fund. Am. Compl. ¶ 36. In Count III, Plaintiff accuses Defendants of conversion of the Long Buyout Fund, and seeks damages in the amount of the fund – an amount which Plaintiff has not pled. Am. Compl. ¶ 42. Count IV raises an allegation of actual fraud against Defendants. According to

the Amended Complaint, Defendants' false representations regarding their compliance with their obligations to Mr. Long resulted in damages to Plaintiff that require compensation. Am. Compl. ¶¶ 44-45  Lastly, Count V asserts a claim of constructive fraud against Defendants, seeking damages from Defendants in the event that their misrepresentations were made innocently or negligently and thus do not amount to actual fraud. Am. Compl. ¶¶ 47-48.  The propriety of the motions to dismiss these counts is addressed below.

### III. Standard of Review

Although Defendants have argued that Plaintiff's Amended Complaint should be dismissed under Rules 12(b)(2) and 12(b)(6), the Court finds Defendants' arguments regarding personal jurisdiction dispositive and, therefore, need only discuss the relevant standard of review for motions made pursuant to Rule 12(b)(2).[3]  Under that rule, a party is permitted to request that a court dismiss an action because the court lacks personal jurisdiction over that party. Fed. R. Civ. P. 12(b)(2).  "[T]he plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." New Wellington Fin. Corp. v.

---

[3] Plaintiff's counsel also devoted substantial effort at oral argument to addressing Defendants' statute of limitations defense.  However, since the Court concludes that it cannot exercise personal jurisdiction over Defendants, it need not address the merits of the statute of limitations arguments.

Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

A court has many options when deciding whether personal jurisdiction exists. A court may, "[i]f the existence of jurisdiction turns on disputed factual questions...resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs, 886 F.2d at 676. A court may also decide the question "'on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint.'" New Wellington Fin. Corp., 416 F.3d at 294 (quoting Combs, 886 F.2d at 676). In that context, "'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge.'" Id. (quoting Combs, 886 F.2d at 676). "Under such circumstances, courts 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" Id. (quoting Combs, 886 F.2d at 676).

"When making its decision, a district court may look to both plaintiff and defendant's proffered proof and, when doing so, should give Plaintiff the benefit of any 'favorable inferences' supported by the record." PBM Prods. v. Mead

8

Johnson Nutrition Co., No. 3:09-cv-269, 2009 U.S. Dist. LEXIS 93312, at *4 (E.D. Va. Sept. 29, 2009) (citing Mylan Labs., Inc. v. Akzo, 2 F.3d 56, 62 (4th Cir. 1993)). If the court does make a determination that jurisdiction is proper based simply on the motion papers and attached memoranda, such a finding "'does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing[,]'" as mentioned above. New Wellington Fin. Corp., 416 F.3d at 294 n.5 (quoting Prod. Grp. Int'l v. Goldman, 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004)).

Regardless of the manner in which a court determines whether or not personal jurisdiction exists, the ultimate question remains the same - whether the plaintiff has proven that the Court has personal jurisdiction over the defendant. "'Personal jurisdiction' is the phrase used to express a court's power to bring a person into its adjudicative process." Noble Sec., Inc. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513, 525 (E.D. Va. 2009) (citing Black's Law Dictionary 857 (7th ed. 1999)). "Federal district courts may exercise such personal jurisdiction 'only to the degree authorized by Congress under its constitutional power to ordain and establish the lower federal courts.'" Id. (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997)). "Furthermore, before

'exercising personal jurisdiction over a defendant, a federal court must have jurisdiction over the subject matter of the suit, venue, a constitutionally sufficient relationship between the defendant and the forum, and authorization for service of a summons on the person.'" Id. (quoting ESAB Grp., Inc., 126 F.3d at 622). According to the Federal Rules of Civil Procedure, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant...who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1). Therefore, the operative question is whether the defendant is subject to the jurisdiction of the courts of the state where the district court sits.

Plaintiff is proceeding, ostensibly, on the theory that Chevron and Texaco are non-resident defendants since she alleges in her Amended Complaint and at oral argument that jurisdiction over such defendants "exists pursuant to Virginia's long arm statute...." Am. Compl. ¶ 1. "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th

Cir. 2003) (citations omitted). Contrary to counsel's apparent assertion during oral argument, Virginia's long-arm statute does not provide an independent basis, alone, upon which this Court can exercise jurisdiction. See id. Jurisdiction must be proper under both the long-arm statute and the Fourteenth Amendment. In fact, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (citing Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002)). As a result, the Court need only address whether exercise of personal jurisdiction in this matter comports with the Due Process Clause of the United States Constitution.

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst of Md., Inc., 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). As to the standard by which courts assess whether minimum contacts exist, it varies "depending on whether the defendant's contacts with the forum state also provide the basis for the suit." Id. When the

11

defendant's contacts form the basis for the lawsuit, those contacts may establish <u>specific personal jurisdiction</u> over the defendant. In determining whether such jurisdiction exists, courts "consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" <u>Id.</u> (citations omitted). "If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state." <u>Id.</u> (citations omitted). In such a scenario, where the defendant's contacts with the forum are "continuous and systematic," the court is said to have <u>general personal jurisdiction</u> and "a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." <u>CFA Inst. v. Inst. of Chartered Fin. Analysts of India</u>, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (citing <u>Perkins v. Benguet Consol. Mining Co.</u>, 342 U.S. 437, 438 (1952)).

## IV. Discussion

Since both Defendants have filed separate motions to dismiss, the Court will address many of the contentions in those

motions independently.   The Court begins its analysis with a determination of whether Plaintiff has made a sufficient showing of personal jurisdiction with respect to Chevron.   Since it is not altogether clear from Plaintiff's briefs, or her counsel's presentation at oral argument, what type of personal jurisdiction she is alleging, the Court will analyze whether her Amended Complaint states a prima facie case of either general or specific jurisdiction - starting with a discussion of general jurisdiction.[4]   Next, the Court will address whether it has personal jurisdiction over Texaco, once again addressing both types of personal jurisdiction.   Lastly, the Court will discuss Plaintiff's requests for jurisdictional discovery and leave to amend the Amended Complaint.

### 1. Personal Jurisdiction as to Chevron

### a. General Personal Jurisdiction

As noted earlier, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant."   Helicopteros Nacionales De Colom., S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984).   "To establish general

_____

[4] Although Plaintiff's Amended Complaint seemed to focus on general jurisdiction arguments, her counsel's argument during the August 9, 2011 hearing seemed to focus more on specific jurisdiction.

jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).   "'[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction.'" Id. at 715 (quoting ESAB Grp., Inc., 126 F.3d at 623).   With these legal principles as a backdrop, the Court will briefly discuss the jurisdictional facts alleged, and the framing of those facts argued by both parties.

### i. Jurisdictional Facts and Argument

Plaintiff dedicates a significant portion of her Amended Complaint to jurisdictional allegations.   She alleges that "Chevron Corporation's commercial activities in Virginia undertaken by its directors, employees, agents and one or more of its over 80 wholly owned and controlled subsidiaries, including Texaco, are overwhelmingly sufficient contacts to support jurisdiction over Chevron and Texaco in Virginia." Am. Compl. ¶ 3.   Such contacts, according to Plaintiff, "are vast and historical, and can be seen everywhere in Virginia, from websites and television commercials to nameplates, signs and products for sale." Am. Compl. ¶ 4.   As specific examples of what Plaintiff has dubbed "overwhelmingly sufficient contacts,"

14

Plaintiff attaches several exhibits to her Amended Complaint. According to Plaintiff, Exhibits One and Two are "screenshots" from Chevron's website which show detailed information on where to obtain a Chevron or Texaco oil change in Virginia. Exhibit Three is purportedly a "screenshot" from Chevron's Global Aviation website which shows that Chevron is actively seeking to sell Chevron and Texaco jet fuel at general aviation locations throughout Virginia. Exhibit Four is allegedly a map of Chevron lubricant marketers located throughout Virginia. Finally, Exhibit Five is a "screenshot" from NAPAONLINE, showing that Chevron also makes products available in Virginia through third-party retailers.

In Chevron's memorandum in support of its motion to dismiss, and attached declarations and exhibits thereto, it seeks to rebut every one of Plaintiff's jurisdictional allegations. Chevron's principal assertion is that the Amended Complaint contains no jurisdictional allegations against Chevron itself. Rather, according to Chevron, the Amended Complaint only makes accusations regarding Chevron's subsidiaries. Chevron's response indicates that "Chevron has never been incorporated in Virginia, been authorized to do business in Virginia, or maintained a registered agent in Virginia." Chevron Mem. Supp. Mot. Dismiss. 9 (citing Endries Decl. ¶ 5). Further, Chevron notes that it sells no gasoline, ships no

15

products, contracts to supply no goods or services, owns no terminals or dispensing facilities, maintains no local listings in telephone or business directories, does not advertise or solicit business in Virginia, maintains no offices, employees, warehouses, plants, suppliers, or distributors, possesses no real property, pays no real property taxes, and maintains no accounts in Virginia. Id. (citing Endries Decl. ¶¶ 6-10). In order to reconcile those statements with the exhibits attached to Plaintiff's Amended Complaint, Chevron states that while it itself has no such interactions with the Commonwealth, "[t]here are, of course, one or more Chevron subsidiaries that do business in Virginia." Id. Chevron then goes on, through an attached declaration, to explain the context behind each exhibit attached to Plaintiff's Amended Complaint.

According to this declaration, although each of Plaintiff's "screenshots" (pictured in Exhibits 1-4) are obtained by following links off of the chevron.com website, the linked webpages are copyrighted and owned/operated by Chevron subsidiaries. Endries Decl. ¶ 13. Moreover, the declaration states that Chevron does not produce the Chevron-branded products found on the NAPAONLINE website discussed by the Plaintiff. Id. at ¶ 16. Rather, those products are produced, sold or marketed, according to Chevron, by Chevron subsidiaries. Id. With respect to the composition of those Chevron

16

subsidiaries, the declaration states that they have conducted business from "time to time" in Virginia, however, they are independently managed from Chevron, Chevron has no control over their day to day operations, they are sufficiently capitalized, and Chevron and its subsidiaries have separate boards, officers, corporate minutes, records and accounts. Endries Decl. ¶ 11. Effectively, Chevron has asserted that Plaintiff's exhibits do show contacts with Virginia by its subsidiaries, but not contacts that can be imputed to Chevron for jurisdictional purposes.

In Plaintiff's memorandum in opposition to Chevron's motion to dismiss, she makes a series of responses to Chevron's jurisdictional arguments. First, she states that "because the jurisdictional argument was not timely filed, it should be denied for that reason alone." Mem. Opp'n Chevron Mot. Dismiss 1. Second, she contends that "[t]he acceptance of Chevron's no 'minimum contacts' protestations would do nothing but move the case (electronically, for the most part) from Virginia to Delaware." Id. Therefore, Plaintiff urges that it would not be practical to dismiss the Amended Complaint even if the Court finds personal jurisdiction wanting. In conjunction with this assertion, Plaintiff claims that even if the case is dismissed for lack of personal jurisdiction, the case would likely come back at a later date if discovery indicates that Defendants are

17

subject to an ERISA claim, which Plaintiff contends could properly be filed in this Court. Id. at 1-2. Third, Plaintiff argues that Chevron and Texaco are not separate entities and that actions affecting Plaintiff were perpetrated by officers, directors, or lawyers for "a company called 'Chevron Texaco Corporation,' which no longer exists in name, but is now Chevron Corporation...." Id. at 3. The relevance of this last argument with respect to personal jurisdiction is not readily apparent. Despite these arguments, however, during oral argument, Plaintiff's counsel acknowledged that she does not disagree with the statements made in Defendants' declarations. Tr. 45, Aug. 9, 2011 ("[T]he declarations from the opposing side, we don't disagree with."). With the arguments of the parties staked out, the Court will address whether or not Chevron is subject to general personal jurisdiction in the present matter.

### ii. Analysis

Prior to considering the merits of Chevron's arguments, the Court will first address the non-substantive counterarguments raised by Plaintiff in her opposition brief. As to the assertion that the Court should not entertain Chevron's personal jurisdiction argument because it was untimely, the Court need look no further than the Court's previous Order, where it stated "Chevron's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim...shall be deemed timely filed."

Docket No. 14. Therefore, the timeliness argument is without merit. As to Plaintiff's assertion that the Court should proceed with the case even if it concludes personal jurisdiction is lacking since a dismissal would merely result in the case proceeding in a different court, such an argument is legally indefensible, even if it recognizes a practical possibility. See Noble Sec., Inc., 611 F. Supp. 2d at 546 (noting that despite considerations of judicial economy, "the Court simply cannot find personal jurisdiction on that basis where none exists otherwise"). With regard to the question of whether Chevron and Texaco are separate entities, the Court is unable to determine how that argument has any bearing on the allegations of personal jurisdiction as to Chevron.[5] Consequently, the Court concludes that Plaintiff's counterpoints have no significant effect on the personal jurisdiction calculus, and the Court must address the merits of Chevron's argument that this Court lacks general personal jurisdiction over it.

"[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005) (citing Purdue Research Found. v. Sanofi-

---

[5] If Plaintiff is arguing that Texaco's jurisdictional contacts should be imputed to Chevron, the analysis in the subsequent section of this Opinion and Order, which addresses whether the Court has personal jurisdiction over Texaco, makes the imputation of those contacts irrelevant.

Synthelabo, S.A., 338 F.3d 773, 788 n.17 (7th Cir. 2003)). See also Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999) (cited by the Fourth Circuit in Saudi and stating that "[c]ourts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts"); PBM Prods., 2009 U.S. Dist. LEXIS 93312 at *5 (noting that a showing of a parent-subsidiary relationship alone cannot support jurisdiction).  While that is the general rule, "a court can assert jurisdiction over a parent corporation if the plaintiff's evidence demonstrates that the subsidiary is a fictitious shield erected by the parent to protect itself from liability." Id. at *9 (citing Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Man., Inc., 519 F.2d 634 (8th Cir. 1975)).

"Thus, for the court to exercise in personam jurisdiction over a defendant parent corporation, the plaintiff must show (1) that the subsidiary's activities in Virginia are sufficient to confer jurisdiction and (2) that the relationship between the parent and its subsidiary is such that the subsidiary's actions can be imputed to the parent." Id. (citing Omega Homes, Inc. v. Citicorp Acceptance Co., 656 F. Supp. 393, 400 (W.D. Va. 1987)). This imputation is reasonable where the plaintiff shows that "the subsidiary acts as an agent or alter ego of the parent."

LTD Mgmt. Co., LLC v. Holiday Hospitality Franchising, Inc., No. 2:07cv530, 2008 U.S. Dist. LEXIS 112024, at *15 (E.D Va. Mar. 11, 2008). In making this determination, courts look at factors such as whether the corporations maintain the necessary formalities, have separate books, have separate officers, directors, and employees, separately manage their own day to day affairs, and the degree of control exercised by the parent over the subsidiary. Id. at *16-17. However, "[c]omplete ownership of a subsidiary that transacts business in the forum is, alone, insufficient to deem the parent company also present within the forum." Colt Def. LLC v. Heckler & Koch Def., Inc., No. 2:04cv258, 2004 U.S. Dist. LEXIS 28690, at *51 (E.D. Va. Oct. 22, 2004) (citations omitted).

Applying the law above, the Court concludes that Plaintiff has failed to present a prima facie case showing that general personal jurisdiction over Chevron exists. In reaching this conclusion, the Court has considered several factors. The Court first considers the exhibits Plaintiff included in her Amended Complaint, which were to serve as examples of Chevron's extensive contacts with Virginia. As noted above, when the Court does not conduct an evidentiary hearing with respect to jurisdiction, it "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the

21

existence of jurisdiction.'" New Wellington Fin. Corp., 416 F.3d at 294 (quoting Combs, 886 F.2d at 676). However, the Court is not constrained to only looking at Plaintiff's filings. See Christian Broad. Network, Inc. v. Busch, No. 2:05cv558, 2006 U.S. Dist. LEXIS 1868, at *6 (E.D. Va. Jan. 9, 2006) (citations omitted) ("Although it is true that a plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of jurisdiction is entitled to have all reasonable inferences from the parties' proof drawn in his favor, district courts are not required to look solely to the plaintiff's proof in drawing these inferences.").

In Chevron's memorandum in support of its motion to dismiss, it directly responds to Plaintiff's exhibits. Chevron notes that the exhibits represent activities taken by subsidiaries of Chevron, not Chevron itself. This argument is not inconsistent with the Plaintiff's allegations. Chevron's statements do not challenge the veracity of Plaintiff's allegations, they merely clarify that Chevron Corporation is not the actor behind the websites and the contacts those sites purportedly show. In fact, as noted above, during oral argument Plaintiff's counsel conceded that Plaintiff has no reason to doubt the truth of Chevron's declarations. Tr. 45, Aug. 9, 2011.

The Court next considers Plaintiff's response to Chevron's arguments. In carrying its burden, Plaintiff has an obligation

to dispute Defendant's factual allegations or produce something akin to "counter affidavits or other sworn testimony or admissible evidence that takes issue with [the defendant's] factual predicate for its motion." Lufti v. United States, No. 1:09-cv-1114, 2011 U.S. Dist. LEXIS 20477, at *4-5 (E.D. Va. Mar. 1, 2011) (discussing a plaintiff's obligation to produce evidence supporting a prima facie showing of personal jurisdiction when confronted with a defendant's motion to dismiss for lack of personal jurisdiction). Plaintiff has failed to produce any evidence, either in court filings or during oral argument, that rebut the evidence submitted by Chevron. Here, as mentioned earlier, in response to Chevron's declarations and argument that Chevron itself maintains no significant presence in Virginia, Plaintiff merely states that Chevron's jurisdictional arguments are untimely and a finding of no personal jurisdiction would be impractical and perhaps inefficient. Mem. Opp'n Chevron Mot. Dismiss 1. These are not valid bases upon which the Court can exercise personal jurisdiction. As a result, the Court credits Chevron's position that Plaintiff's exhibits do not exemplify significant contacts on the part of Chevron, but rather, only represent contacts of Chevron's subsidiaries, and thus are not a proper basis upon which this Court can exercise general personal jurisdiction over Chevron itself.

Since the Court has concluded that Plaintiff's exhibits are not sufficient to establish a prima facie showing of general personal jurisdiction, the Court next considers whether Plaintiff has made any other jurisdictional allegations in her Amended Complaint upon which this Court could exercise general personal jurisdiction over Chevron. Paragraph Four of the Amended Complaint does include additional jurisdictional allegations. It states that "[t]he activities of the combined companies under Chevron Corporation in Virginia are vast and historical, and can be seen everywhere in Virginia, from websites and television commercials to nameplates, signs and products for sale." Am. Compl. ¶ 4. Such allegations, however, are also insufficient to support general personal jurisdiction over Chevron. To the extent that the actions allegedly performed by "combined companies" have simply been performed by subsidiaries of Chevron, the discussion above illustrates that without more, the actions of subsidiaries cannot be blindly attributed to the parent for jurisdictional purposes.

However, even if Plaintiff is alleging that the contacts referenced above are imputable to Chevron, such contacts are not sufficiently continuous and systematic to warrant a finding of general personal jurisdiction here. The maintenance of a website designed solely and exclusively to provide information to browsers, Endries Decl. ¶ 14, does not bestow upon the Court

general jurisdiction over the website's owner. See ALS Scan, Inc., 293 F.3d at 715 ("We are not prepared at this time to recognize that a State may obtain general jurisdiction over out-of-state persons who regularly and systematically transmit electronic signals into the State via the Internet based solely on those transmissions."); Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd, No. 1:09-cv-550, 2009 U.S. Dist. LEXIS 97704, at *10 (E.D. Va. Oct. 16, 2009) (citing Carefirst of Md., Inc., 334 F.3d at 400) ("A website that provides information, including toll-free phone numbers, is not sufficiently interactive to form a basis for personal jurisdiction."). Similarly, the fact that Defendants air "television commercials" in Virginia does not mean that Defendants have continuous and systematic contacts with Virginia sufficient to justify general personal jurisdiction. "[A]dvertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction." Nichols v. G. D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993). Lastly, the allegation that Defendants have nameplates, signs and products for sale in Virginia, without further information, does not change the calculus. See Convergence Techs. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 638 n.17 (E.D Va. 2010) (noting that the sale of a small amount of products, relative to nationwide sales as a whole,

when the product is not at issue in the litigation, is insufficient to support general jurisdiction). Consequently, since the Court finds that the contacts with Virginia that Plaintiff has shown through the proffered exhibits are not imputable to Chevron, and the contacts that may be imputable to Chevron are not sufficiently continuous and systematic, the Court concludes that it does not have general personal jurisdiction over Chevron in this matter.

### b. Specific Personal Jurisdiction

The Court also concludes that it cannot exercise specific personal jurisdiction over Chevron. As mentioned previously, determining whether a court can exercise specific personal jurisdiction over a defendant is a two pronged inquiry, focusing both on the long-arm statute of the state in which the district court sits and due process considerations. While these two inquiries merge, and the Court need only conduct a constitutional analysis, see Consulting Eng'rs Corp., 561 F.3d at 277, the Court will look at both prongs in the present case given the significant discussion of the Virginia long-arm statute during oral argument.

In relevant part, Virginia's long-arm statute provides that:

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

   . . .

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth....

Va. Code Ann. § 8.01-328.1. On several occasions, both in Plaintiff's briefs and at oral argument, Plaintiff argues through counsel that Virginia's long-arm statute provides a basis for this Court to exercise specific personal jurisdiction over Chevron. However, in making that argument, Plaintiff seems to misconstrue the language of the statute and the contacts necessary to trigger its applicability to Chevron.

As to the misconstruction of the statute, in Plaintiff's Amended Complaint, she states that the long-arm statute "provides jurisdiction over actions taken 'directly or by an agent' with consequences in Virginia." Am. Compl. ¶ 1. Similarly, during oral argument, Plaintiff's counsel stated that the "statute is pretty specific where it says if they take an action which has consequences in Virginia against citizens of Virginia [personal jurisdiction is proper]...." Tr. 15, Aug. 9, 2011. Plaintiff's counsel also said the statute is "for someone who's far away who did something with consequences in Virginia," id. at 16, and "[Chevron] stopped [paying] without reason, and

it hurt a Virginian. And that gives the Virginia court the right under the long-arm statute to bring them here." Id. at 15. These statements oversimplify Virginia's long-arm statute. A defendant's conduct does not fall within the long-arm statute simply because some action had consequences in Virginia, or as Plaintiff puts it, a company metaphorically shoots an arrow that "got deflected off a tree in Ohio and came in and hurt somebody in Virginia." Id. at 58. Rather, the Court's analysis as to whether Chevron falls within the reach of the long-arm statute must closely track the words of the statute itself.

At oral argument, Plaintiff suggested that subparagraph (A)(4) of the Virginia long-arm statute reaches Chevron's conduct in this case, given Chevron's, or its subsidiaries', significant business contacts in Virginia. Id. at 14. According to that provision, Plaintiff must show that (1) Chevron caused tortious injury in the Commonwealth by an act or omission outside of the Commonwealth; (2) Chevron regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth, and (3) Plaintiff's cause of action arises from such conduct. See Va. Code Ann. § 8.01-328.1. It is unnecessary for the Court to make a finding as to whether Chevron caused tortious injury in the Commonwealth by an act or omission outside of the Commonwealth

28

(as required by the first factor), because it is clear from the briefs, declarations, and points made at oral argument, that Plaintiff has failed to make a prima facie showing that Chevron itself does business, engages in persistent conduct, or derives substantial revenue from goods used or consumed or services rendered, in the Commonwealth. As discussed in the previous section, Plaintiff has only made a prima facie showing that Chevron's subsidiaries have such a relationship with Virginia. Yet, in order for jurisdiction to be proper over Chevron based on the actions of subsidiaries, Plaintiff "should show (1) that the subsidiary's activities in Virginia are sufficient to confer jurisdiction pursuant to section 8.01-328.1 and (2) that the relationship between the parent and its subsidiary is such that the subsidiary's actions can be imputed to the parent." Omega Homes, Inc., 656 F. Supp. at 399 (citations omitted) (emphasis added). While it may be true, as Plaintiff argues, that Chevron derives revenue from the conduct of its subsidiaries, Plaintiff has failed to show that the conduct of the subsidiaries should be imputed to Chevron for personal jurisdiction purposes. The law discussed above regarding imputation is straightforward and clear. Yet, Plaintiff has not addressed those issues in her briefs or at oral argument. While Plaintiff has referenced "appropriate accounting standards" in arguing that income of a subsidiary derived from Virginia is sufficient to subject a

29

parent corporation to personal jurisdiction, no supporting facts or law are provided.   Tr. 49, Aug. 9, 2011.    Therefore, the Court concludes that section 8.01-328.1(A)(4) does not provide a statutory basis for exercising specific personal jurisdiction over Chevron in the present case.[6]

While the Court finds subparagraph (A)(4) inapplicable, at oral argument, Plaintiff implicitly presented an alternative position as to how Chevron itself should be subject to specific personal jurisdiction in this Court, regardless of the conduct of its subsidiaries.   According to Plaintiff, Chevron can be hailed into a Virginia court because Chevron itself stopped making payments to a recipient in Virginia, and that conduct caused injury to Plaintiff in Virginia.    While such an allegation could conceivably fall within one of the provisions of the long-arm statute, it fails to satisfy the due process component of the specific personal jurisdiction inquiry.

As noted above, the Fourth Circuit has applied a three-part test for determining whether a defendant can be hailed into a

---

[6] Plaintiff repeatedly cites Jones v. Boto Co., 498 F. Supp. 2d 822, 829 (E.D. Va. 2007) for the premise that a foreign company can be hailed into court in Virginia because that company placed products into the stream of commerce, some of those products were eventually sold in Virginia, and that company also maintained a website accessible in Virginia.   However, that case did not deal with the imputation of a subsidiary's business contacts in Virginia to the parent company.    In Boto, the company being sued was the actual company whose conduct gave rise to jurisdiction.    That has not been shown in the present case.

state court without violating constitutional due process protections. The court must "consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc., 293 F.3d at 712 (citations and quotations omitted). Here, Plaintiff has not made any showing that Chevron purposefully directed any contact relevant to her substantive claims towards Virginia. Not a single allegation in Plaintiff's Amended Complaint mentions conduct that took place in Virginia regarding the origination or termination of either the Long Post-Retirement Benefits or the Long Buyout Fund. At best, the Amended Complaint alleges that Plaintiff has chosen to live in Virginia, and thus the failure to receive the funds at issue hurt her in Virginia. However, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Even if Plaintiff suffered injury in Virginia because she was no longer receiving money to which she was allegedly entitled, there has been no showing that Chevron purposefully availed itself of the privilege of conducting activities related to her claims in the

Commonwealth. Consequently, Plaintiff has not adequately demonstrated any basis upon which the Court could exercise personal jurisdiction over Chevron.

## 2. Personal Jurisdiction as to Texaco

### a. General Personal Jurisdiction

#### i. Jurisdictional Facts and Argument

Although Plaintiff does not appear to be asserting general personal jurisdiction against Texaco, the Court found oral argument on the subject of personal jurisdiction somewhat murky. Therefore, out of an abundance of caution, the Court will address the possibility of asserting general personal jurisdiction over Texaco, prior to turning to specific personal jurisdiction. In the previous section, the Court carefully examined the jurisdictional facts Plaintiff alleges against Chevron, and the facts and arguments asserted by Chevron in response to Plaintiff's claims. Texaco's motion to dismiss raises many arguments identical to those made by Chevron. While the Court does not find it necessary to repeat most of the law discussed above, it will briefly recap the jurisdictional facts that Plaintiff alleges solely against Texaco.

In Plaintiff's Amended Complaint, she makes fewer jurisdictional allegations specifically against Texaco than she does against Chevron. She first asserts that Texaco is a wholly owned and controlled subsidiary of Chevron Corporation and,

32

therefore, the contacts of Chevron Corporation are "overwhelmingly sufficient contacts to support jurisdiction over Chevron and Texaco in Virginia." Am. Compl. ¶ 3. As an example of these contacts, she alleges that the "combined companies" under Chevron Corporation have contacts with Virginia such as websites, television commercials, nameplates, signs and products for sale. Am. Compl. ¶ 4. Apart from alleging that Chevron Corporation's alleged contacts in Virginia can be imputed to Texaco, the only statements that the Amended Complaint specifically makes regarding Texaco is that the "Chevron.com website directs Texaco brand loyalists to numerous Texaco Xpress Lube locations in Virginia," Am. Compl. ¶ 4 & Ex. 2, and that Chevron markets "Texaco branded jet fuel and aviation services throughout the state of Virginia." Am. Compl. ¶ 5 & Ex. 3.

In Texaco's memorandum in support of its motion to dismiss, it "adopts and incorporates herein by reference the grounds and arguments made by Chevron" in its motion to dismiss. Texaco Mem. Supp. Mot. Dismiss 1. In addition, however, it also proffers facts supporting its argument that it is not subject to personal jurisdiction in Virginia. According to Texaco, it is not qualified to do business in Virginia, Soler Decl. ¶ 4, and it sells no gasoline, ships no products, contracts to supply no goods or services, owns no terminals or dispensing facilities, maintains no local listings, advertises and solicits no

33

business, has no offices, employees, warehouses, plants, supplier or distributors, owns no real estate, and maintains no bank accounts in Virginia. Soler Decl. ¶¶ 6-10. Texaco does note, however, that it was authorized to do business, and did business in Virginia, as late as 2006. As to the exhibits attached to Plaintiff's Amended Complaint, Texaco introduces a declaration, much like Chevron, which states that the "screenshots" do not relate to Texaco, but rather to subsidiaries of Chevron or Texaco. Texaco does not deny that it has subsidiaries that have conducted business in Virginia, but according to Texaco, those subsidiaries are independently managed, are sufficiently capitalized, and have separate boards, officers, corporate minutes, records and accounts. Soler Decl. ¶ 11.

### ii. Analysis

Drawing on the legal analysis outlined above with respect to Chevron, the Court concludes that Plaintiff has failed to make a prima facie showing that this Court has general personal jurisdiction over Texaco. As in the case of Chevron, nothing in Plaintiff's filings indicate that Texaco itself has continuous and systematic contacts with the Commonwealth. Texaco has introduced documents of its own, and reasserted documents introduced by Chevron, indicating that the contacts by which Plaintiff seeks to impute personal jurisdiction over Texaco were

actually attributable to Chevron or Texaco subsidiaries, rather than Texaco itself.   Moreover, not only has Plaintiff failed to produce anything that contradicts Texaco's contention that the subsidiaries are completely independent of Texaco and Chevron, her counsel stated at oral argument that Plaintiff does not disagree with Texaco's declarations to that effect.   Tr. 45, Aug. 9, 2011.   As such, for the same reasons discussed in its analysis with respect to Chevron, the Court finds no contacts sufficiently continuous and systematic on the part of Texaco that would warrant a finding of general personal jurisdiction.

In reaching this conclusion, the Court has considered the fact that Texaco, unlike Chevron, may have been licensed to do business, and may have done business, in Virginia, as late as 2006.   However, while being licensed to do business in Virginia is certainly a factor for consideration in determining whether a defendant has continuous and systematic contact with a forum, that fact alone is not sufficient to confer upon the Court general personal jurisdiction over Texaco.   See Sandstrom v. Chemlawn Corp., 904 F.2d 83, 89-90 (1st Cir. 1990) (holding that obtaining a license to conduct business in a state, and appointing an agent for service of process, are not sufficient contacts with a forum by themselves to support the exercise of general jurisdiction); Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 748 (4th Cir. 1971) (assessing the sufficiency of

contacts for personal jurisdiction purposes and stating "[w]e think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context"); Genocide Victims of Krajina v. L-3 Servs., Inc., No. 10cv5197, 2011 U.S. Dist. LEXIS 92113, at *13 (N.D. Ill. Aug. 17, 2011) (noting that general personal jurisdiction is not created merely because defendant is licensed to do business in a given state).

In order to determine whether Plaintiff has advanced a prima facie case of general personal jurisdiction, the Court must "engage in an individual analysis of the facts of the case." Taltwell, LLC v. Zonet USA Corp., No. 3:07cv543, 2007 U.S. Dist. LEXIS 93465, at *19 (E.D. Va. Dec. 20, 2007). In Taltwell, for example, a district court in this District noted that some factors considered by courts in determining whether general personal jurisdiction exists is whether the defendant maintains a place of business in the forum, is licensed to do business in the forum, has persistent business contacts with the forum, or generates a substantial amount of revenue in the forum. Id. at *19-20 (citations omitted). See also Colt Def. LLC, 2004 U.S. Dist. LEXIS 28690 at *70 (looking, for general jurisdictional purposes, at factors such as where defendant is licensed to do business, where it maintains an office and registered agent, where its officers or directors are found,

where it pays taxes, and where it owns property). Here, the only contact imputable to Texaco in Virginia is that Texaco was licensed to do business at some point in 2006, or earlier. Since Plaintiff fails to allege any additional conduct, and has not cited case law indicating that being licensed to do business alone is sufficient, the Court finds that Plaintiff has not alleged the type of continuous and systematic conduct necessary for general personal jurisdiction.

### b. Specific Personal Jurisdiction

Turning to specific personal jurisdiction, the Court also concludes that Plaintiff has failed to show a basis for exercising such jurisdiction over Texaco. Once again, Plaintiff claims that jurisdiction is proper under subparagraph (A)(4) of the Virginia long-arm statute as well as the Fourteenth Amendment's Due Process Clause. Regardless of whether or not Texaco's activities fall within the provisions of the long-arm statute, the alleged contacts do not pass muster under the Due Process Clause. As noted above, when assessing whether specific personal jurisdiction is appropriate, a court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc., 293 F.3d

37

at 712 (citations and quotations omitted). Although Texaco may have purposefully directed contacts toward Virginia as late as 2006, at no point does Plaintiff allege that her cause of action arose out of any of Texaco's contacts with the forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations and quotations omitted) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."). There is no allegation that any alleged conversion or fraud perpetrated against Plaintiff occurred in Virginia or was otherwise associated with Virginia in any way. At most, Plaintiff alleges that Defendants have business interests in Virginia that do not relate to this lawsuit and Plaintiff has suffered injury in Virginia based on conduct that occurred in some undisclosed location. As a result, since there are no allegations that Plaintiff's cause of action arises out of Texaco's contacts with the forum, her allegations are insufficient to bring Texaco within the specific personal jurisdiction of this Court.

### 3. Jurisdictional Discovery

At the conclusion of oral argument, Plaintiff's counsel requested the Court grant her the opportunity for jurisdictional discovery in the event that the Court concluded, based on the information before it, that it could not exercise personal jurisdiction over Defendants. Tr. 50, Aug. 9, 2011. According to the Fourth Circuit, "the decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 216 n.3 (4th Cir. 2002). However, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst of Md., Inc., 334 F.3d at 402 (citations omitted). Where "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction, [the Fourth Circuit sees] no reason to overturn the district court's exercise of discretion." Base Metal Trading, 283 F.3d at 216 n.3; see also McLaughlin v. McPhail, 707 F.2d 800, 806-07 (4th Cir. 1983) (finding no abuse of discretion in denying jurisdictional discovery when "[a]gainst the defendants' affidavits stating that they had not engaged in any of the act [sic] enumerated in § 6-103, McLaughlin offered 'nothing beyond his bare allegations' that

the defendants had had significant contacts with the state of
Maryland").

In the present case, Plaintiff has alleged two potential
bases upon which she asserts the Court could exercise personal
jurisdiction. Under her first theory, the Court could exercise
personal jurisdiction over Defendants because of their
substantial business connections to Virginia. However, as
discussed above, Defendants have shown through their
declarations that those contacts pled by Plaintiff are actually
attributable to Defendants' subsidiaries. Plaintiff has
conceded that she does not disagree with Defendants'
declarations. See Tr. 45, Aug. 9, 2011. Therefore, since
Plaintiff has not suggested the existence of information that
shows that Defendants themselves, rather than their
subsidiaries, had any meaningful contact with Virginia, or
information that shows the contacts of their subsidiaries should
be imputed to the Defendants because the subsidiaries operate as
an alter ego, the Court sees no justification for allowing
jurisdictional discovery on Plaintiff's first theory.

Under Plaintiff's second theory, Defendants are subject to
personal jurisdiction in Virginia because they took actions
outside of Virginia that had consequences in Virginia. However,
at no point does Plaintiff allege that Defendants purposefully
directed any contact toward Virginia that gave rise to

40

Plaintiff's claims.   As stated previously, at best, Plaintiff alleges that Defendants took action somewhere outside of Virginia, and those actions happened to hurt a Virginian by dint of Plaintiff's unilateral decision to live in the Commonwealth. However, as noted above, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson, 357 U.S. at 253.   Since Plaintiff has not given the Court any reason, such as a concrete proffer as to material jurisdictional facts or an allegation that Defendants' declarations are mistaken, to conclude that discovery on this point would be anything more than a fishing expedition, such discovery is not warranted.   Therefore, the Court denies Plaintiff's request.

### 4. Leave to Amend

During oral argument, Plaintiff's counsel also requested leave to amend Plaintiff's Amended Complaint in the event the Court found it legally inadequate.  Tr. 50, Aug. 9, 2011.  The Fourth Circuit counsels that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile."  Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009).

In the personal jurisdiction discussion above, the Court concluded that Plaintiff's allegations in the Amended Complaint, as well as her counsel's statements at oral argument, fall short of making the prima facie showing necessary for this Court to exercise personal jurisdiction over Defendants.  The Court also concluded that Plaintiff has not advanced any facts indicating that discovery on this point would be anything more than a fishing expedition.  When viewing these two jurisdictional shortcomings together, the Court could reasonably conclude that allowing amendment would be futile because such an amendment could not cure Plaintiff's inability to adequately allege jurisdiction.  See, e.g., Hosch v. United Bank, Inc., 4:09cv1490, 2010 U.S. Dist. LEXIS 89133, at *20 (D.S.C. Aug. 3, 2010) ("Plaintiff has failed to allege facts sufficient to make a prima facie showing that this court has personal jurisdiction over Defendants....Thus, allowing Plaintiff to amend his Complaint as to these Defendants would be futile."); Rochon v. Snyder's Gateway, Inc., 2:05cv554, 2006 U.S. Dist. LEXIS 8709, at *16 (E.D. Va. Feb. 13, 2006) (denying Plaintiff's request for leave to amend the complaint to add a defendant because such an amendment would not cure the lack of personal jurisdiction).

However, while the Court's conclusions above indicate that Plaintiff has not alleged sufficient jurisdictional facts, and that Plaintiff will not be granted jurisdictional discovery in

order to search for additional information relevant to
jurisdiction, the Court must address one other possibility
before determining whether an amendment would be futile.  The
Court must scour Plaintiff's briefs, and the points made at oral
argument, to determine whether Plaintiff has alleged that she
has evidence currently in her possession, that for reasons
untold, were not already brought to the Court's attention, but
which might be introduced in a second amended complaint in order
to show that jurisdiction is proper.  If this were true,
Plaintiff could conceivably cure her jurisdictional allegations
by simply including this previously omitted information.

After reviewing these relevant sources, the Court concludes
that Plaintiff has not alleged that she has information in her
possession that could be used to bolster her jurisdictional
allegations if she were granted leave to file a second amended
complaint.  Though Plaintiff does not discuss the prospect of
new information in her briefs, her counsel did discuss new
information during oral argument.  According to counsel,
Plaintiff may be in possession of a "lifetime agreement from the
'70s."  Tr. 24, Aug. 9, 2011.  Additionally, Plaintiff's counsel
indicates that, if granted jurisdictional discovery, he would
depose Mr. Long's former secretary as well as the former CEO of
Texaco.  Tr. 25, Aug. 9, 2011.  However, at no point does
Plaintiff ever indicate that these sources could provide any

43

information bearing on whether Defendants are subject to personal jurisdiction in this forum. These sources are merely discussed in the context of whether Plaintiff has stated an adequate claim to withstand a challenge under Rule 12(b)(6). Therefore, since Plaintiff has failed to make a prima facie showing of personal jurisdiction over Defendants, has failed to argue that she has facts in her possession that could be added to a second amended complaint in order to show jurisdiction is proper, and has failed to persuade the Court that jurisdictional discovery would amount to anything more than a fishing expedition designed to confirm or deny jurisdictional speculation, the Court determines that allowing leave to amend would be futile. Consequently, Plaintiff's request is denied.[7]

## V. Conclusion

Previously in this Opinion and Order, the Court deemed Chevron's first motion to dismiss to be **MOOT** because Plaintiff

---

[7]The Court notes that Plaintiff originally filed a complaint that Chevron moved to dismiss, inter alia, on the ground that this Court has no personal jurisdiction over Defendants. In response, Plaintiff filed the Amended Complaint currently before the Court, which attempted to cure any supposed jurisdictional shortcomings. This Amended Complaint was met with motions to dismiss by both Chevron and Texaco, once again, arguing that this Court has no personal jurisdiction. The Court found these arguments persuasive as reflected in the analysis above. The fact that Plaintiff has been unable to remedy these jurisdictional shortcomings in her first two bites at the apple, and failed to submit any additional information at oral argument, make it all the more likely that the requested third bite would be futile.

filed an Amended Complaint after the filing of that motion. The Court followed that determination with an analysis of the motions to dismiss filed by Chevron and Texaco, seeking dismissal of Plaintiff's Amended Complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Based on the 12(b)(2) analysis above, the Court concludes that it does not have personal jurisdiction over Chevron or Texaco in this action. As a result, the Court need not address the issues raised in the Rule 12(b)(6) portions of the motions to dismiss and, for the reasons stated above, **GRANTS** Defendants' motions to dismiss. While the Court finds personal jurisdiction over Defendants wanting, it reaches no conclusion as to the substantive aspects of Plaintiff's Amended Complaint. Plaintiff is therefore free to take whatever action she sees fit in a more appropriate forum.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____
/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September __2__ , 2011